IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| CARRASCO-MIRANDA, ANGEL<br><br>*Plaintiff*<br><br>VS.<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY<br><br>*Defendant* | CASE NO:<br><br><br>RE: DISCRIMINATION ON BASIS OF DISABILITY |

# COMPLAINT

COMES NOW Plaintiff, ANGEL CARRASCO-MIRANDA (hereinafter Carrasco), through its undersigned attorney, and respectfully alleges and prays as follows:

## I. JURISDICTION & PARTIES

1. This suit is brought and jurisdiction lies pursuant to Section 107(a) of the Americans with Disabilities Act (hereinafter "ADA"), 42 U.S.C. § 12117, which incorporates by reference § 706 of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5.

2. All conditions precedent to jurisdiction under § 706 of Title VII, 42 U.S.C. § 2000e-5(f)(3), have occurred or been complied with.

    a) A Title II of the American with Disabilities Act, Section 504 of the Rehabilitation Act of 193, discrimination on the basis of disability was filed with U. S. Department of Justice Civil Rights Division Disability Rights Section, of the unlawful practice alleged herein.

    b) A Notification of Right to Sue letter is not required according to Title II of ADA or file a complaint with any other Federal Agency before going to

court.

c) This complaint has been filed within one (1) year of the occurrence of the actions by Puerto Rico Electric Power Authority (PREPA).

3. Plaintiff, Angel Carrasco, is a citizen of the United States and the state of Puerto Rico who resides at 656 Miramar Avenue, Apt. 10A, San Juan, PR 00907.

4. All the discriminatory authority practices alleged herein were committed within the Commonwealth of Puerto Rico.

5. Defendant Puerto Rico Electric Power Authority (hereinafter "PREPA") is a corporation, with its office and principal place of business in San Juan, Puerto Rico.

6. PREPA is a "person" within the meaning of § 101(7) of the ADA, 42 U.S.C. § 12111(7), and § 701 of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e.

7. PREPA is engaged in an industry that affects commerce within the meaning of Section 101(7) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e.

8. PREPA employs 15 or more employees and is an "employer" within the meaning of Section 101(5)(A) of the ADA, 42 U.S.C. § 12111(5)5(A).

## II. STATEMENT OF FACTS

9. On February 20, 2015 at around 10:40 AM Plaintiff arrived at the PREPA building located at Ponce de León Avenue, San Juan with the intention of seeking advice due to the very high voltage at 656 Miramar Condominium and the Apartment in which Plaintiff resides, which has a voltage of 135 volts, and due to this the Motherboard of his Laptop and the screen display (MAC PRO), his Intel Reader and other equipment were burned. The Intel Reader and other equipment, which are the equipment that he

used daily to be able to do his personal things, to be able to read and write, which he must use due to his impediment of Dyslexia.

10. The Inter Reader is equipment which reads his documents and also the recorder that helps him memorize the things that he has to do daily, and without this equipment it is impossible for him to work in his corporation, "Hacienda Porvernir Corp.". This corporation is his lively hood which pays his expenses and pays Child Support. He cannot work if he does not have this equipment.

11. He went to PREPA to make a complaint, when he entered the building, security asked him for identification and he showed them his ID. He mentioned to the security guard that he has an impediment and he needed assistance to inform his situation. Security called someone to assist him.

12. The person who came down to assist him, the security guard mentioned to this person that he has an impediment of Dyslexia (he sees many words tri-dimensional) and that he needed a person to help him fill out the forms. He told them if they needed evidence or papers which indicate his condition and he explained about the high voltage in his apartment. He explained that the high voltage had damaged his equipment. For the second time he asked for assistance, because he has an impediment and that if they wanted verification; the person ignored him and told him that he was in a hurry and had very little time. He told the plaintiff that he had to go up and he ignored him. The plaintiff explained to PREPA that he had to record their conversation due to his condition (short-term memory), the employee looked at him in an angry way, plaintiff explained the damage to his equipment and he look at plaintiff as if he was lying.

13. Plaintiff again explained to the employee that he needed to have assistance since he did not have his equipment, and the employee repeated to him

several times, very upset, that he could not record it, that he had not given him permission, and that he should find a person that could help him due to his impediment. Plaintiff explained again that he needed to record what they talked because he has a "short-term memory" the employee repeated that they had not given him permission to record, he said very upset that he did not care if plaintiff had an impediment. The employee responded to plaintiff in a loud voice "I cannot help you"; find somebody that will do it for you. That "this is your problem" (in a loud voice).

14. Plaintiff asked the employee for his name and he said he would not give it to him, he then got up from his chair and repeated No in a load voice, that he was not going to help him with this matter at all and to find somebody to help him. Plaintiff became upset and asked him for his name, but he refused to give it to him and left.

15. Upset the Plaintiff left the building and called the Police to make a complaint, for violation and bullying, to refuse accommodation under ADA, to assist him; and he waited for the Police.

16. Plaintiff explained the situation to the Police and initially they did not want to help him. He told them that if they could not help him that he would give the information to the Federal Police and that he was recording them due to his impediment, and that if it was also necessary he would also make a complaint against them; and he explained his impediment to them. The police changed their way of thinking and decided to go to PREPA to ask who was the person who had refused to help plaintiff.

17. Two employees of PREPA came out of the building to ask the two policemen what was happening. The policemen explained that the Plaintiff wanted to make an accusation of bullying and Federal Discrimination for refusing to assist him and help him with his problem.

18. The employees from security explained to the Policeman that they were going to help him. The Policemen asked the Plaintiff if he wanted to make the charges of Discrimination and Bullying, and he told them, that if they helped him he would not make the complaint.

19. The two persons from security told him that they were going to help him with everything in this regard and the Policemen left.

20. Mr. Geraldo Díaz and Mr. Carlos Bosques asked plaintiff what had happened. Plaintiff explained his condition of Dyslexia to them so that they would understand him, and asked where he could record the conversation due to his impediment, he showed them a document that entitles him to record the conversations. They read the document he showed them. The Plaintiff showed them the evaluation of the specialized University of Loma Linda, Doctor's medical report of impediments and his evaluation. He also showed them his California Disability Card, his ID card as a student of disable, a page from the State and Federal Court for assistance and giving him authorization to record the court proceedings.

21. The two employees went to find somebody to help the Plaintiff, but the person who could help him was the same one that had ignored him. He asked for his name and he refused to give it to plaintiff in front of Mr. Díaz and Mr. Bosques. Plaintiff explained again what had happened, he mentioned to the person (the one that did not want to give his name) about the problem of high voltage and that he did not have equipment to read and write, and he started to have a discussion with Plaintiff. Mr. Díaz and Mr. Bosques were trying to make the person understand that the Plaintiff as a client needed accommodation due to his condition, he said that that was not his problem and that he did not give care about his condition. The people from security were astounded

by the attitude of this employee towards the Plaintiff. Plaintiff became upset and raising his voice said "this is the help that you are going to give me". Mr. Diaz grabbed the employee and took him out of the building, and the Plaintiff told Mr. Bosques that he was going to call the Federal Police at this time. Mr. Díaz and Mr. Bosques told Plaintiff to calm down and to take a break. Plaintiff calmed down and explained to them his condition, being mad, and almost about to cry, and again explained about his impediment. That it was not his fault that he was born with this impediment, and that he did not deserve to be treated this way. Plaintiff told Mr. Díaz and Mr. Bosques if they had a son with this impediment would they like him to be treated like this? Mr. Basques told Plaintiff that was very bad, that he understood, and he was right, that they were going to find somebody and when they would come back they would attend to him. Plaintiff returned to the Electric Power Authority an hour later and asked security who was the Director of Human Resources. He spoke with María Méndez, Director of Human Resources and explained the situation and asked for the name of the employee who did not want to give his name. Plaintiff told Ms. Méndez that he had bullied him and discriminated against him, and that he wanted to file a federal complaint with regard to this. The Director mentioned that she was a discrimination attorney and that she had to file these charges with the EEOC and Plaintiff explained he could not fill out the form due to the fact that his equipment was damaged by the high voltage and that he needed help. She mentioned a person that makes discrimination reports and that could help him and that his name was Juan David Padilla.

22. Plaintiff narrated to Mr. Juan David Padilla what had happened and explained his condition and showed him all his documents, evaluation of the University

of Loma Linda and the DOR Estate Rehabilitation, the information of his Counsellor, Mrs. Teresa Pulsonen, San Diego, California.

23. The Director Ms. Méndez, came down with Mr. Padilla and Ms. Walleska Rodríguez, is the person who could help Plaintiff with the process, and would reimburse the damages of the equipment). Ms. Rodríguez agreed to contact Plaintiff and so far it has not happened.

24. Plaintiff asked for the Discrimination Form and Mr. Padilla was going to help him, so that they repair or reimburse his equipment cost, since Plaintiff needed them as soon as possible. Again Plaintiff asked about the form and was told they would do it later. Plaintiff explained his condition to Mr. Padilla again, and he took him to Mr. Carlos Otero, to fill out a form (Orientation Page for Claims) to fill it out and to list all of the equipment that had been damaged. Plaintiff explained again to Carlos Otero that he needed help to fill out the form due to his condition and Mr. Otero helped him fill out the form.

25. The following day, February 21, 2015, Plaintiff called Mr. Juan David Padilla asking him for assistance to be able to comply with the form and he mentioned that he had still not been able to get the persons to help him and when Plaintiff mentioned to him the Discrimination complaint he told him that he would call him later. As of this date Mr. Padilla has not called the Plaintiff.

26. Plaintiff's girlfriend helped him fill the form and his mother helped him to write the letter that was going with the form. Plaintiff took the form to Mr. Carlos Otero on March 17, 2015 at 4:45 PM. Mr. Otero explained that the procedure could take 2 to 3 weeks, to accept the complaint.

27. Plaintiff asked Mr. Carlos Otero about Mr. Juan David Padilla and asked him for his telephone number. He said he did not have it, and punched the papers of the complaint at 6:57 PM, and told him that was all. That it would take approximately two weeks for them to call him. They agreed to help Plaintiff with the process of the technological equipment that he needs, but up to today they have not called him.

28. Mr. Juan David Padilla agreed to help Plaintiff fill out the form of the complaint for discrimination to no avail. Mr. Padilla is aware of his impediment and the information the Plaintiff provided him. Mr. Padilla has discriminated against Plaintiff, because he has not helped him, knowing his impediment. He refused to give him the discrimination form, and as of this date he has not helped him.

29. Plaintiff returned to the Electric Power Authority on March 25, 2015, and spoke with Mr. Carlos Bosques to get Mr. Padilla and his telephone number. After a few days Plaintiff found Mr. Padilla's telephone number and called him, but he never answered his calls. Days after Mr. Bosques communicated with Mr. Padilla and he gave him a telephone number to call Technological Assistance Program a Mrs. Vivian Santos, 787-474-9999. Plaintiff asked him about the Discrimination Form and he told him again to return another day so he could help him.

30. Plaintiff called Mrs. Vivian Santos, who told him she could give him an application, which is useless to him.

31. Plaintiff called Mr. Juan David Padilla on April 7, 2015, who informed him he no longer worked for that department that there was a new person. That they could no longer help him with this matter. The new person was Liliam Machado. On April 8, 2015, Plaintiff communicated with her, she indicated that now the case passed to María Charneco on April 6, 2015.

32. Plaintiff called María Charneco on April 8, 2015; she told him that this case takes time, a couple of months. Plaintiff informed her that if by April 20, 2015 he did not have an answer, he was going take action with the U. S. Department of Justice.

33. On April 27, 2015 PREPA called Plaintiff's mother, but she could not answer at that time. His mother called María Charneco, who informed her that they were going to make an appointment and visit Plaintiff's residence to see the equipment that was damaged. Plaintiff called to confirm the appointment for April 28, 2015 at 1:30 PM.

34. The same day of the appointment, Ms. Elsie Miranda from PREPA called at 9:42 AM to cancel the same. Plaintiff called Ms. Charneco of PREPA at her telephone number to corroborate, Ms. Charneco had left the case to a Ms. Elsie J. Miranda Ronda, and no answer was received.

35. Ms. Elsie J. Miranda Ronda called the PREPA to investigate the high voltage and on March 30, 2015; two employees form PREPA arrived at the Condominium. They verified that the voltage was high (135v). They had to make a general turnoff of the building to fix the voltage. The building has a contact with the Electric Power Authority to verify the substation and the maintenance of the building, which did not do its job.

36. Plaintiff visited the offices of the Prosecutor of Disabled Persons at PREPA to help him at the beginning of May 2015. They made several investigations, in this case Mr. Pellot Ocasio from PREPA. Plaintiff gave him the following documents:

a) Orientation Page for Claims stamped by Mr. Carlos Otero of PREPA accompanied by a letter dated February 23, 2015 by Ms. Elsie Miranda (Plaintiff's mother) for refusing to help him.

b) Statement of Facts at the beginning of May 2015.

c) Price list of the equipment damaged, stamped by Mr. Carlos Otero on March 17, 2015.

d) Copy of e-mail dated March 11, 2015 to servicios@aeepr.com for the reason of the follow up due to the high voltage.

e) Copy of e-mail dated March 11, 2015 to ivelisse.river@gfrmedia.com due to the high voltage.

f) Copy of e-mail dated March 10, 2015 to ivelisse.river@gfrmedia.com with the photos of the high voltage.

g) Letter to Mrs. Lisa Donahue, Restructuring Official of the EPA, dated March 5, 2015.

h) Letter Plaintiff gave to the President of the Condominium dated February 27, 2015.

i) Bill of González – González, Alfonso, Expert Electrician, License #5630 due to the high voltage.

j) Letter of the OMBUDSMAN Office of the Prosecutor for the Citizens dated May 12, 2015, reference of Angel Carrasco Miranda, SJU 1502559, Account no. 7416079704, and Complaint No. WR-437395.

37. Plaintiff had an appointment on June 5, 2015 at 10:30 AM with Attorney William Pellot Ocasio. He was accompanied by Carmen Messon. Atty. Pellot Ocasio

asked the Plaintiff to whom he had made the claims, (Plaintiff had previously given him the documents where it stated to whom the claim had been given).   During the conversation Atty. Pellot said that he would find Plaintiff's file.  He returned without the file, but he had a notebook.  He stated Carlos Otero was the person to whom the claim was made.  He explained that any claim for damages take time.  That not necessarily is the OMBUDSMAN going to determine, the insurance is the one that determines.  If the effort is interrupted by telephone the term is longer.  The term was interrupted until June 5, 2015.   (Plaintiff was never sent in writing or told that if the effort in this case was interrupted the investigation would take one more year).  He explained the decision is being made during these months and it cannot exceed July, to give an example, if processes of complaint or for making the payments to the person affected continue to be made.  Plaintiff explained that according to the ADA Federal Law – they have to immediately give the equipment to the person that has the impediment and which depends on it to survive.  He was explaining the facts of February 20, 2015 which occurred at the facilities of PREPA, something which Atty. Pellot did not know.  Plaintiff told Atty. Pellot that he needed an answer now.   Atty. Pellot mentioned that he is waiting for Mr. Carlos Otero to respond.  Atty. Pellot talked with Wanda and he says that she is waiting for Mr. Carlos Otero's response.  Plaintiff asked who Wanda was.

38. Plaintiff called Mr. Carlos Otero several times in front of Atty. Pellot, but there was no answer.

40. Atty. Pellot Ocasio said that Mr. Toledo from the Legal Division was working on this case. This person works at PREPA's Risk Administration.  Mr. Toledo

could not give an answer, that the only thing that he could say was that they were working on it, but he could not say the status.

41.   Plaintiff explained that he could not wait any longer, that there is a Federal ADA Law that says that it covers cases like these to resolve the party aggrieved immediately.  (Exhibit – Loma Linda University, Psychological Assessment).

42.   Plaintiff asked Atty. Pellot for a letter indicating what he said on June 5, 2015, including that Mr. Toledo said that they are working on this case, and that he mention all of the persons who say that they are still working on the case.  Atty. Pellot summoned Plaintiff to get the letter of June 9, 2015 at 1:00 PM.  Atty. Pellot's secretary read the letter to Plaintiff and he did not understand.  She provided him with a new appointment the same day at 2:30 PM with Atty. Pellot so he could explain it to him.

43.   Plaintiff arrived at 2:40 PM and Atty. Pellot explained that they needed a certification of the cost of the equipment and the help of the Administration of Vocational Rehabilitation (AVR), (Department of Rehabilitation San Diego, CA), and a certification of purchase of the other equipment that the ARV did not purchase.  He also explained that the advisor had to sign a certified letter of this equipment.

44.   Plaintiff called the advisor Mrs. Teresa Pausen, Tel. 619-767-2120 in front of Atty. Pellot, there was a recording that she was not available until June 16, 2015 and to leave a message.

45.   Atty. Pellot Ocasio asked Plaintiff if he was going to take him for the case of discrimination for the treatment at the facilities of PREPA or his attorney.  Plaintiff answered that his attorney would handle it.

46. Atty. Pellot informed Plaintiff that they were going to try to have the insurance of PREPA pay the damages to the equipment's.  Loma Linda University conducted a study (by Monica Hodges, MA., and Kendall Boyd, Ph. D., Clinical Supervisor 9/24/02) "Psychological/Assessment" where the evaluation says: that Mr. Angel Carraso depends and lives with this equipment daily to be able to function, therefore they have to resolve immediately.

47. Plaintiff does not have the receipt of the "Inte Reader" that he purchased out of his pocket for a cost of $3,000.00.  This equipment is no longer for sale; it has been replaced by "ProdigiDuo" which cost $4,244.00 with its programs.

### III. CLAIM FOR RELIEF

48. From February 20, 2015, the day Plaintiff received his injuries, through the present time, Plaintiff has been an individual with a "disability" within the meaning of Section 3(2) of the American with Disabilities Act, 42 U.S.C. § 12102(2).  More particularly, Plaintiff has a physical impairment that substantially limits one or more of his major life activities, has a record of such impairment, and is regarded by PREPA as having such impairment.

49. Plaintiff is a "qualified individual with a disability" as that term is defined in § 12111(8).  More specifically, Plaintiff is an individual with a disability who, with the reasonable accommodation could have completed his claim at PREPA.

50. Despite request, PREPA refused to make reasonable accommodation to Plaintiff by denying him equipment required to complete his claim for the items damaged.

51. PREPA's failure to make reasonable accommodation to Plaintiff's physical disability constitutes discrimination against Plaintiff with respect to the terms, conditions, or privileges.  PREPA's actions constitute a violation of Section 102(b)(5)(A) of the ADA, 42 U.S.C. § 12112(b)(5)(A).

52, PREPA has failed to undertake any good faith efforts, in consultation with Plaintiff, to identify and make a reasonable accommodation with Plaintiff to his condition.

53. In failing to make reasonable accommodation to Plaintiff's physical disability, PREPA acted with malice or with reckless indifference to the federally protected rights of Plaintiff.

54. As a direct and proximate result of PREPA's discrimination on the basis of disability, Plaintiff has suffered lost wages and benefits and lost employment opportunities (promotions).

55. Defendant's failure to make reasonable accommodation to Plaintiff has caused, continues to cause, and will cause Plaintiff to suffer substantial damages for pecuniary losses, mental anguish, loss of enjoyment of life, and other nonpecuniary losses.

## IV. RELIEF REQUESTED

Plaintiff requests the judgment of this Court against Defendant PREPA as follows:

(1) Find and hold that Plaintiff has suffered from Defendant's acts of discrimination on the basis of disability;

(2) Order that Plaintiff be awarded the amount of the cost of the equipment damaged by PREPA'S negligent acts estimated in $35,000.00.

(3) Award Plaintiff compensatory, damages in an amount to be determined at trial of this matter'

(4) Award Plaintiff punitive damages in an amount to be determined at trial of this matter;

(5) Enjoin PREPA from any further prohibited discrimination against Plaintiff;

(6) Award Plaintiff his attorney fees, including litigation expenses, and the costs of this action; and

(7) Grant such other and further relief as may be just and proper.

(8) Plaintiff demands trial by jury.

In San Juan, Puerto Rico, this 18th, day of February, 2016.

S/Winston Vidal Gámbaro
**WINSTON VIDAL GÁMBARO**
**Attorney for Plaintiff**
USDC-PR 130401
PO Box 193673
San Juan, PR 00919-3673
Tel. (787) 751-2864
Fax: (787) 763-6114
email: wvidal@prtc.net
wvidal.law@gmail.com